UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

DIANE DRACH,

                    Plaintiff,              Civil No. 15-5467 (NLH/KMW)

v.

                                            **OPINION**

SUN LIFE ASSURANCE COMPANY
of CANADA,

                    Defendant.

_____

**APPEARANCES:**

Thomas Joseph Hagner
Hagner & Zohlman, LLC
57 Kresson Road
Cherry Hill, NJ 08034
     *Attorney for Plaintiff*

Peter J. Guffin
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
     *Attorney for Defendant*

**HILLMAN, District Judge:**

This matter comes before the Court on the summary judgment motions of Plaintiff Diane Drach and Defendant Sun Life Insurance Company of Canada.  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.  For the reasons to be discussed,

Plaintiff's motion will be denied and Sun Life's motion will be granted.

## I.   BACKGROUND

This case is about the denial of long term disability benefits.  Plaintiff Diane Drach worked as a Programmer Analyst/Network Administrator at Inolex Chemical Company from 1996 to 2010. (Def.'s Statement of Undisputed Materials Facts ("Def.'s SMF") ¶ 1 [Doc. No. 17-2]; Pl.'s Statement of Undisputed Materials Facts ("Pl.'s SMF") ¶ 6 [Doc. No. 18-2].) As an Inolex employee, Plaintiff was a beneficiary of a group insurance policy issued by Sun Life which included long term disability coverage. (Def.'s SMF ¶ 2; Pl.'s SMF ¶ 1.)

Pursuant to the policy, before long term disability benefits are payable, the employee must satisfy the 180-day elimination period with the required days of "total disability," provide proof of total disability, and have regular and continuing physician care. (Def.'s SMF ¶ 6 (citing Administrative Record ("AR") at 114, 78 [Doc. No. 17].)) "Totally disabled" is defined by the policy as "unable to perform the Material and Substantial Duties of his [or her] Own Occupation." (Def.'s SMF ¶ 7 (citing AR at 90.))  After long term disability payments have been paid for 36 months, the employee continues to be "totally disabled" if he or she "is unable to perform with reasonable continuity any Gainful

Occupation for which he is or becomes reasonably qualified for by education, training or experience." (Def.'s SMF ¶ 7 (citing AR at 90.))  Beneficiaries must provide "proof" of their claim to Sun Life, which "must include evidence demonstrating the disability, including but not limited to, hospital records, physician records, . . . x-rays, narrative reports, or other diagnostic testing materials . . . ." (Def.'s SMF ¶ 5.)

Plaintiff stopped working on April 9, 2010.  She submitted a claim for long term disability benefits to Sun Life on October 25, 2010, claiming disability due to extreme fatigue, chronic pain, muscle weakness, inability to concentrate and cognitive problems. (Pl.'s SMF ¶ 9; Hagner Decl., Ex. B, Claim Packet at 4 of 12.)  To support her disability claim, Plaintiff submitted the Attending Physician's Statement ("APS")[1] of Dr. Eileen Moynihan who opined that Plaintiff could not perform "firm grasping" due to psoriatic arthritis. (Def.'s SMF ¶ 18 (citing AR at 145.))

By letter dated September 14, 2011, Sun Life notified Plaintiff that it was unable to locate a copy of the denial letter but that a decision to deny benefits was made. (Pl.'s SMF ¶ 11.)  Plaintiff submitted an appeal by letter dated February 7, 2012, which was supported by the medical records of Drs.

---

[1] The APS is a form created by Sun Life.

David A. Bundens, M.D., Gerald Falasca, M.D., Eileen Moynihan, M.D., and Michael DiMarino, M.D.  (Pl.'s SMF ¶ 14.)  Sun Life denied Plaintiff's appeal by letter dated May 9, 2012.  (Pl.'s SMF ¶ 19.)  In response, Plaintiff instituted a lawsuit against Sun Life on September 20, 2012. (Pl.'s SMF ¶ 22.)  The lawsuit was resolved by way of a settlement agreement in which Sun Life agreed to reconsider Plaintiff's long term disability claim on remand to determine whether she met her burden of proving she was totally disabled as of April 9, 2010, when she stopped working, and beyond. (Def.'s Response to Pl.'s SMF ¶ 23 (citing AR at 421 ("Evaluation of Claim on Remand") [Doc. No. 22].))

Plaintiff submitted a claim for further benefits on October 10, 2013. (Pl.'s SMF ¶ 24.)  To support her claim, Plaintiff submitted a "Claimant Activity Questionnaire" which stated that she had become numb, lost fine motor skills, was unable to make a fist because her hands were swollen, and her psoriasis caused her hands to crack and bleed. (Pl.'s SMF ¶¶ 24-25.)  Plaintiff stated she had been diagnosed with psoriatic arthritis, psoriasis, and bilateral carpel tunnel disease. (Pl.'s SMF ¶ 26.)  Plaintiff submitted the records from her treating physicians, Dr. Michael S. Rogers, M.D., Dr. Moynihan, Heartland Rehabilitative Services, and Bannett Eye Centers. (Pl.'s SMF ¶ 29.)  Plaintiff also submitted another APS from her treating rheumatologist, Dr. Moynihan, which was completed on October 23,

2013. (Pl.'s SMF ¶ 30.)  Dr. Moynihan's October 23, 2013 APS
opined that Plaintiff was unable to grasp or engage in fine
manipulation or keyboarding. (Pl.'s SMF ¶ 36.)  Plaintiff
additionally submitted a favorable decision for Social Security
Disability Income which stated that Plaintiff was disabled as of
April 2010 and suffered multiple impairments, including
bilateral carpel tunnel syndrome and psoriatic arthritis. (Pl.'s
SMF ¶ 27.)  The decision did not discuss Plaintiff's ability to
use a keyboard. (Hagner Cert., Ex. K, SSDI Notice of Award.)

Plaintiff's October 10, 2013 claim to Sun Life was denied
by letter dated July 17, 2014. (Pl.'s SMF ¶ 37.)  The letter
explained that the medical reports contained insufficient
information to support Plaintiff's claim of psoriatic arthritis.
(Pl.'s SMF ¶ 38.)  The denial was based in part on a report by
medical consultant Dr. Tanya Lumpkins, M.D., a rheumatologist.
(Pl.'s SMF ¶ 41.)

Plaintiff submitted an administrative appeal of the July
17, 2014 denial on January 12, 2015. (Pl.'s SMF ¶ 48.)
Plaintiff's appeal stated she was incapable of performing the
material and substantial duties of her occupation because it
required "fingering, keyboarding and near acuity" and that the
fact that she could not perform keyboarding was supported by Dr.
Moynihan's findings. (Pl.'s SMF ¶ 49.)  Plaintiff further
contended she had vision problems.  (Id.)  The appeal contained

another APS from Dr. Moynihan and a vocational report by Dr. Charles Kinkaid. (Pl.'s SMF ¶¶ 50-51.)

Plaintiff's administrative appeal was denied by letter dated March 20, 2015. (Pl.'s SMF ¶ 60.)  Sun Life's decision was supported, in part, by the medical reviews of: Dr. Lawrence J. Albers, a psychiatrist and neurologist; Dr. Rajendra Marwah, a rheumatologist; and Dr. Jose Perez, an internist. (Pl.'s SMF ¶ 61.)

## II. JURISDICTION

The Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Specifically, this matter arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., as amended.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  Id.  "In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;

instead, the nonmoving party's evidence 'is to be believed and

all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)

(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact.") (citation omitted); see

also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d

Cir. 2001) ("Although the initial burden is on the summary

judgment movant to show the absence of a genuine issue of

material fact, 'the burden on the moving party may be discharged

by "showing" — that is, pointing out to the district court —

that there is an absence of evidence to support the nonmoving

party's case' when the nonmoving party bears the ultimate burden of proof.")(citing <u>Celotex</u>, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the . . . pleading[s.]" <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).  For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011)(citing <u>Celotex</u>, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.

**IV. DISCUSSION**

**A. Standard of Review under ERISA**

There is no dispute that the plan at issue qualifies as an ERISA plan.  ERISA provides that a plan participant or beneficiary may bring a suit "to recover benefits due to him [or her] under the terms of his plan, to enforce his [or her] rights

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  The statute, however, does not specify a standard of review for an action brought pursuant to § 1132(a)(1)(B). Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989).  The Supreme Court clarified that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115.  When the plan affords the administrator with discretionary authority, courts must review the benefit decision for an abuse of discretion. Conkright v. Frommert, 559 U.S. 506, 512 (2010) ("[W]hen the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict."); see Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n.6 (3d Cir. 2010)(explaining that courts in the Third Circuit have referred to this standard of review as "abuse of discretion" or "arbitrary and capricious" interchangeably).

The parties agree that the abuse of discretion/arbitrary and capricious standard applies to this case because the plan at issue gives the plan administrator discretionary authority to decide eligibility benefits or interpret terms of the Plan.

9

## B. Abuse of Discretion Analysis

Under the abuse of discretion standard of review, "the Court's role is not to interpret ambiguous provisions de novo, but rather to 'analyze whether the plan administrator's interpretation of the document is reasonable.'" Connor v. Sedgwick Claims Management Services, Inc., 796 F. Supp. 2d 568, 580 (D.N.J. 2011) (quoting Bill Gray Enters. Inc. Employee and Health Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001))(other citation omitted).  A decision is considered arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (further citation omitted).

To determine whether a plan administrator abused its discretion, the Court must focus "on how the administrator treated the particular claimant." Id. (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir. 2007)).  "Specifically, in considering the process that the administrator used in denying benefits, we have considered numerous irregularities to determine whether . . . the administrator has given the court reason to doubt its fiduciary neutrality." Id. (internal quotations omitted).  This is accomplished "by taking account of several different, often case-specific, factors, reaching a result by weighing all together." Id. (quoting Metropolitan Life

10

Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008))(further citation
omitted).

The scope of a court's review is narrow, however, and the
court "is not free to substitute its own judgment for that of
the plan administrator in determining eligibility for plan
benefits." Connor, 796 F. Supp. 2d at 580 (quotation omitted).
Thus, the plaintiff retains the burden to prove that he is
entitled to benefits, and that the plan administrator's decision
was arbitrary and capricious.

Here, Sun Life is both the decider and payor of claims.
While that conflict of interest does not alter the standard of
review the Court applies, it is one factor to be considered in
evaluating whether Sun Life abused its discretion, the
significance of which depends on the facts of each case.
Conkright, 559 U.S. at 512; Metro. Life Ins., 554 U.S. at 108
("The significance of the conflict of interest factor will
depend upon the circumstances of the particular case.").

Additionally, another factor the Third Circuit considers
which can cause a heightened review is "demonstrated procedural
irregularity, bias, or unfairness in the review of the
claimant's application for benefits." Kosiba v. Merck & Co., 384
F.3d 58, 66 (3d Cir. 2004).  Therefore, the Court considers the
structural conflict of interest and whether there is any

evidence of procedural irregularities, bias, or unfairness in Sun Life's review of Plaintiff's claim.

## C. Plaintiff's Motion for Summary Judgment

The Court finds that Plaintiff received a full and fair review of the January 2015 administrative appeal of Sun Life's denial of her claim for long term disability benefits. Plaintiff's long term disability claim based on her psoriatic arthritis and inability to use a keyboard was largely unsupported by the medical evidence in the record.  The question for the Court is whether Sun Life's decision was "reasonable" and supported by "substantial evidence."  Fleisher v. Standard Ins. Co., 679 F.3d 116, 121 (3d Cir. 2012).  The relevant support for Plaintiff's appeal consisted of APS statements submitted by her rheumatologist, Dr. Moynihan, and an award for Social Security Disability benefits.  Sun Life reviewed the findings using eight board certified physicians, including three board certified rheumatologists, to review all the medical proof and comment on Plaintiff's functional capacity over the course of two independent appeals.  The overwhelming evidence suggested Plaintiff was not disabled and could perform her own light occupation.

After the previous settlement and remand, Sun Life referred Plaintiff's file to Behavioral Medical Institute, an independent medical vendor, to obtain a rheumatologist's opinion on

12

Plaintiff's functional capacity. (Def.'s SMF ¶ 71.)  Behavioral
Medical Institute selected Dr. Lumpkins, who concluded there was
no evidence of impairment at any time based on her review of the
medical evidence, including Dr. Moynihan's APS forms. (Def.'s
SMF ¶ 72 (citing AR 1106-07) ("Her psoriatic arthritis was never
documented to be of sufficient severity to preclude her from
performing the routine duties of a light occupation."))
Plaintiff's file was also reviewed by a psychologist, Dr. Price,
who concluded Plaintiff was not functionally impaired from a
psychiatric perspective from the time frame considered, April,
2010 to 2013. (Sun Life SMF at ¶ 70 (citing AR at 1032-33)).
Based on these reports, Plaintiff's claim was denied.  Plaintiff
again appealed and provided a vocational report which concluded
that Plaintiff was "unemployable" because she could not perform
keyboarding.

Sun Life then referred Plaintiff's file to Network Medical
Review, an independent medical vendor, who referred the review
to rheumatologist Dr. Rajendra Marwah, internist Dr. Jose Perez,
and psychiatrist Dr. Lawrence Albers.  All three doctors
concluded there was no evidence of impairment at any time.  (Sun
SMF ¶¶ 99-103.)  In whole, the administrative record contains
functionality or treatment records from eight rheumatologists
and a primary care physician: Drs. Adelizzi, Falasca, Moynihan,
Rogers, Payne, Laufer, Madhavi, Lumpkins, and Marwah.  Only one,

13

Dr. Moynihan, submitted information in support of Plaintiff's claim, which consists of only Dr. Moynihan's previous APS forms. Further, Dr. Moynihan did not test Plaintiff's functionality and did not review other physicians' findings.

Sun Life briefly summarizes the medical record in support of its claim denials as follows:

| Date | Medical Evidence |
|------|------------------|
| 02/22/2010 | Plaintiff's physician, Dr. Michael S. Rogers, finds Drach had "[n]o recent arthralgias, myalgias, rash." (Id. at ¶ 74 (citing AR at 1192.)) |
| 04/09/2010 | Drach stops working. (Id. at ¶ 14.) |
| 05/20/2010 | Dr. Rogers states: "No rashes seen." (AR at 1164.) |
| 06/07/2010 | Dr. Moynihan finds that Drach's psoriasis is "confined mostly to her ears." (AR at 172-73.) |
| 08/13/2010 | Dr. Rogers states: "No rashes seen." (AR at 1153.) |
| 05/07/2012 | Rheumatology nurse Veronica Canino finds that Drach's hands were "without warmth or swelling, synovitis, or significant hand deformities." (Def.'s SMF ¶ 52 (citing AR at 754.)) |
| 7/19/2012 | Pain clinic nurse Stacey Eadie states that Drach's physical examination was normal including "[m]uscle tone, bulk, and strength are normal, and power is 5/5 in all major muscle groups in lower extremities, such as flexors and extensors of elbows, wrists, fingers, hips, knees and ankles." (AR at 749.)  Her psoriasis was in her ears.  (AR at 751.) |

| 07/31/2012 | Rheumatologist Dr. Madhavi finds Drach had "no tenderness or swelling" in her metacarpophalangeal joints, "mild tenderness" over her distal interphalangeal joint and proximal interphalangeal joint and "scattered psoriatic rash over fingers of both hands." (AR at 857.) |
|---|---|
| 08/27/2012 | Dermatologist Hye Jin Chung states Drach's "psoriasis in skin is very mild and localized on elbow, knee, ear, and hands." (AR at 589.) |
| 02/15/2013 | Rheumatology nurse Canino states Drach had "few psoriatic lesions" and hands "without warmth or swelling." (AR at 1270.) |
| 04/22/2013 | Rheumatologist Dr. Terri Laufer states Drach had "[v]ery mild psoriasis with no objective evidence of inflammatory arthritis." (Def.'s SMF at ¶ 65 (citing AR at 1008.)) |
| 11/04/2013 | Dr. Rogers states Drach had "normal gait; grossly normal muscle tone and muscle strength; full, painless range of motion of all major muscle groups and joints"; and "no ulcerations, lesions or rashes" of the skin. (Def.'s SMF at ¶ 68 (citing AR at 965.)) |

Plaintiff argues that Sun Life's denial of her claim for long term disability benefits related to her January 2015 administrative appeal was arbitrary and capricious because: (1) Sun Life ignored and failed to refute the evaluations of Plaintiff's vocational consultant and treating rheumatologist (who opined Plaintiff could not use a keyboard); (2) the Social Security award was dispositive; and (3) Plaintiff is unable to perform the computer-based occupations Sun Life suggested.

15

The Court rejects Plaintiff's argument that Sun Life was required to rebut Dr. Moynihan's APS forms and Dr. Kinkaid's vocational report.  Plaintiff bears the burden of proving that she was totally disabled through the 180-day elimination period which ended on October 7, 2010.  Even if Sun Life was required to "refute" Dr. Moynihan's opinion, there is ample evidence in the record which does refute her findings.  For example, Dr. Payne acknowledged that Dr. Moynihan diagnosed Plaintiff with psoriatic arthritis but noted that her medical records did not "clearly document inflammatory features in the historical data." (AR at 375.)  Dr. Payne concluded, "[a]lthough a diagnosis of psoriatic arthritis is made and she is treated for the same with the most recent treatment noted to be in October 2010, I can find no objective evidence that this condition is active or producing any impairment as no examiner reports any objective features that are consistent with a degree of psoriatic arthritis that would be producing restrictions or limitations on activities." (Id. at 376.)

Additionally, Dr. Lumpkins concluded that Plaintiff's psoriatic arthritis did not change around April 2010 when she stopped working and that at no time has her psoriatic arthritis "documented to be of sufficient severity to preclude her from performing the routine duties of a light occupation." (AR at 1105-06.)  Similarly, Dr. Marwah stated that there were no

16

limitations for keyboarding. (AR at 1758.)[2]   Plaintiff also

claims that Dr. Falasca diagnosed Plaintiff with psoriatic

arthritis, and Dr. Lumpkins found this diagnosis was supported.

However, Dr. Falasca also stated the psoriatic arthritis was

stable, not disabling, and further, diagnosis is not in and of

itself proof of disability.  Indeed, the medical evidence in the

records demonstrated it was not.

---

[2] Plaintiff argues Dr. Marwah did not specifically make a finding
with regard to Plaintiff's keyboarding abilities.  Plaintiff
takes issue with Dr. Marwah's allegedly ambiguous answer to the
following question:

> 3. From a physical functional perspective, does the
> available medical treatment documentation provide
> evidence that Ms. Drach was incapable of continuing to
> perform full-time (i.e. 8 hours a day, 5 days a week)
> Light Work duties beginning on or about April 10, 2010
> through October 6, 2010 and continuing to the present?
> Please discuss and note any specific medical
> restrictions and limitations that were applicable
> during this period of time. Specifically, please also
> discuss Ms. Drach's ability to keyboard and any
> restrictions and limitations associated with her
> ability to keyboard, finely manipulate and grasp with
> her hands during these periods of time . . .

> [Answer:] No. From a rheumatology perspective in
> particular, there is no reason as to why Ms. Drach
> could not perform Light Work duties beginning on or
> about 04/10/10 through 10/06/10 and continuing to the
> present. Based on the evidence provided and as
> summarized above, Ms. Drach should be able to perform
> these functions without any restrictions or
> limitations.

The Court finds it was not arbitrary and capricious for Sun Life
to conclude that Dr. Marwah determined Plaintiff had the ability
to use a keyboard based on her response to the question posed.

17

Plaintiff claims Sun Life "shut its eyes" to Dr. Moynihan's APS forms.  ERISA does not require administrators to accord special deference to Plaintiff's treating physicians, "nor does it impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Baker v. The Hartford Life Ins. Co., No. 08-6382, 2010 WL 2179150, at *14 (D.N.J. May 28, 2010), aff'd sub nom. Baker v. Hartford Life Ins. Co., 440 F. App'x 66 (3d Cir. 2011)(citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)); see also Burk v. Broadspire Servs., Inc., 342 F. App'x 732, 737 (3d Cir. 2009)("ERISA does not require that plan administrators give the opinions of treating physicians special weight.")(further citation omitted).  Only one of Plaintiff's doctors supported her claim, and the conclusions of that report were undermined by contemporaneous treatment records. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 823-24 (2003)("Courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

Plaintiff argues that like the administrator in Culley v. Liberty Life Assur. Co. of Boston, 339 F. App'x 240 (3d Cir. 2009), Sun Life relied on its own consulting physician above

18

Plaintiff's treating physician despite the inconsistencies in its consultants' reports.  The instant facts are readily distinguishable.  In Culley, the weight of evidence was in the plaintiff's favor, while here, the substantial weight of the evidence shows Plaintiff submitted inadequate proof of disability.

Moreover, the only additional evidence Plaintiff provided to Sun Life upon remand was notice that she was awarded Social Security Disability benefits.  Plan administrators are not bound by whether the claimant receives SSDI.  See Burk v. Broadspire Servs., Inc., 342 F. App'x 732, 738 (3d Cir. 2009) ("[T]he Social Security Administration's determination of 'disability' is not binding in the instant case, where the determination is governed by the plan terms rather than statute."); see also Menes v. Chubb & Son, 101 F. Supp. 3d 427, 436 (D.N.J. 2015) (rejecting the plaintiff's argument that MetLife failed to consider a favorable Social Security Disability decision, noting the "legal principles controlling the Social Security analysis differ from those considered in an ERISA analysis").  Further, the SSDI decision did not discuss Plaintiff's ability to keyboard.  While the Court considers this as a factor, the SSDI determination does not tip the scale in Plaintiff's favor.

Additionally, Plaintiff argues that Sun Life ignored her occupational limitations, suggesting she could perform six

occupations, all of which involved keyboarding, grasping, and
fine finger manipulation.  Plaintiff argues that a plan
fiduciary is required to "connect the medical evidence" to the
claimant's "actual physical capacity," otherwise, its
determination that the claimant can perform a given occupation
is arbitrary and capricious. (Pl.'s Br. at 12 (citing Dunn v.
Reed Group, Inc., 2009 WL 2848662, at *14-15 (D.N.J. September
2, 2009)).  Sun Life did connect the medical evidence, and it
showed that Plaintiff was not disabled.  This holds true even in
the consideration of the structural conflict of interest present
with Sun Life as the decider and payor.  Additionally, there is
no claim by Plaintiff of procedural irregularities, bias, or
unfairness, and the Court finds none.  Accordingly, summary
judgment on Plaintiff's claim will be denied.

**D. Defendant's Motion for Summary Judgment**

Sun Life argues Plaintiff failed to meet her burden of
proving her alleged disability.  More specifically, Sun Life
asserts that Plaintiff failed to submit proof satisfactory to
Sun Life that, due to injury or sickness, she was unable to
perform the Material and Substantial Duties of her own
occupation from April 10, 2010 and through the 180-day
Elimination Period. (Def.'s SMF at ¶¶ 5-7.)[3]

_____

[3] Plaintiff appears to abandon her claim that she was disabled
due to psychological issues in her January 2015 appeal.  Even if

Ability to find employment is only relevant if Plaintiff first met her burden of proving she was unable to perform her own occupation.  Plaintiff submitted a report by vocational consultant Charles Kinkaid, who claimed that, as of January 9, 2015, Drach was "unemployable" because she could not perform keyboarding (as per Dr. Moynihan's October 2013 APS), she was of "advanced work age," and because her skills and experience were obsolete, apparently because she was not trained in the most current programming languages. (Hagner Cert., Ex. S.)[4]  This report, however, was premature until a finding that Plaintiff was unable to perform her own occupation was made, which never occurred.

Plaintiff also argues that her diagnosis of psoriatic arthritis was supported by medical evidence and accepted by Dr. Lumpkins. (AR at 1104.)  While it is true that Dr. Lumpkins

_____

that claim is not abandoned, there is substantial medical evidence that she was not disabled from a psychological perspective as of April 10, 2010 and beyond. (Sun Life SMF ¶¶ 39, 70.)

[4] Further, this case is distinguishable from Shah v. Broadspire Servs., Inc., No. 06-3106, 2007 WL 2248155, at *6 (D.N.J. Aug. 2, 2007), where the court found that a consultant made "no effort" to determine if a person with the plaintiff's physical limitations could perform eight potential jobs.  Here, however, the overwhelming weight of the medical evidence in the record showed Plaintiff did not have any physical limitations.  Stated more precisely, no other physician besides Dr. Moynihan opined that Plaintiff's hands were so cracked and swollen she could not use a keyboard.

found sufficient medical evidence to agree with her diagnosis of psoriatic arthritis in 2004, there are three critical holes in Plaintiff's argument.  First, the record does not explain why Plaintiff was able to work with psoriatic arthritis in 2004 and not in 2010.  Second, diagnosis alone is not proof of disability.  Third, Dr. Lumpkins did not agree Plaintiff was disabled based on psoriatic arthritis. (AR at 1105-06 ("The medical record fails to demonstrate the exact clinical change that occurred in the early part of 2010, necessitating the time that the claimant stopped working . . . . Her psoriatic arthritis was never documented to be of sufficient severity to preclude her from performing the routine duties of a light duty occupation."))

Sun Life also asserts it is entitled to judgment on Count II of Plaintiff's complaint, which seeks a Life Waiver of Premium benefits, which is a separate and distinct claim from her long term benefits claim.  Sun Life argues this claim was resolved in the parties' August 2013 settlement. (Def.'s SMF ¶ 43.)  Sun Life claims that Plaintiff waived this claim in the parties' prior settlement agreement.  Plaintiff does not oppose this argument and the Court will grant summary judgment on Claim II as well. (Pl.'s Response to Def.'s SMF ¶ 43.)

**V. CONCLUSION**

Summary judgment will be entered in favor of Sun Life.

Plaintiff's motion will be denied.  An Order accompanying this

Opinion will be entered.


s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

Dated: September 28, 2016

At Camden, New Jersey